No. 21,352.

NATHAN HENSHAW, *Appellant,* v. ALBERT J. SMITH et al.,
*Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACTS—*Partly Valid—Partly Invalid—Enforcement.* If a con-
tract contains provisions some of which are valid and some of which are
invalid, and the lawful matter can be readily severed from that which
is unlawful, the lawful portion of the contract will be upheld. (*Fackler
v. Ford,* McMahon 21, 1 Kan. [Dass. ed.] 463, syl. ¶ 2.)

2. LANDLORD AND TENANT—*Valuable Improvements by Tenant—Reim-
bursement—When Due.* Where a tenant makes lasting and valuable
improvements on a farm which the landlord agrees to pay for when
the tenancy is terminated, the tenant's right to reimbursement for
the improvements is sufficiently mature to justify his cause of action
when the landlord leases the farm to another tenant and the latter is
let into possession of part of the property.

3. SAME—*Limitation of Actions.* The statute of limitations does not
begin to run until an obligation is due.

4. SAME—*Limitation of Actions—Statute of Frauds.* Where the time
fixed for payment of an oral obligation is uncertain, but its maturity
might have arrived within one year, and the promisee had fully per-
formed his part of the obligation, the statute of limitations did not
begin to run until the obligation matured, and the obligation was not
repugnant to the statute of frauds.

5. SAME—*Measure of Recovery.* Where parties, by agreement, fix the
measure of recovery due from the one to the other, their agreement
governs, and abstract principles of law relating to the measure of re-
covery when agreements are wanting are inapplicable.

Appeal from Douglas district court; CHARLES A. SMART,
judge. Opinion filed March 9, 1918. Affirmed.

*J. B. Wilson,* and *B. V. Pardee,* both of Lawrence, for the
appellant.

*John J. Riling,* and *Edward T. Riling,* both of Lawrence, for
the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by a landlord against his
tenant on certain rent notes, and for the proceeds of the land-
lord's share of a wheat crop, and a cross action by the tenant

for permanent improvements placed on the land pursuant to certain oral agreements made from time to time between the landlord and the tenant.

The plaintiff rented his farm in Douglas county to the defendant, A. J. Smith. The other defendants are the wife and a son of the tenant. The tenancy began in March, 1897, and continued for about twenty years. It had not been completely terminated at the inception of this lawsuit, although the farm ere then had been leased to another tenant, and the latter was in possession of part of the land.

The defendant, A. J. Smith, admitted his liability on the rent notes, and admitted his liability for the plaintiff's share of the proceeds of the wheat crop, but disputed its amount. There was also a minor item or two touching the rent of a small acreage of pasture, which was to be computed on its value as wheat land.

For several years there was apparently no written lease between the parties. Later, about 1906, annual written leases between the parties began to be their practice, but, according to defendant's pleading and testimony, these leases were only to evidence the rent charges, and not for the purpose of defining the leasehold as an ordinary tenancy from year to year. Defendant's cross petition alleged that, in addition to the written contracts of lease, there was a series of oral agreements whereby defendant was to occupy the farm as long as plaintiff owned it and whereby defendant was privileged to place permanent improvements upon the land, upon condition that if plaintiff should sell the land, or if defendant was otherwise dispossessed, the plaintiff was to reimburse defendant for his labor and expenses incurred in making these improvements. Pursuant to these oral understandings agreed to from time to time, defendant planted an orchard on the land in 1900, and at various later intervals he built an addition of three rooms and a porch to the farmhouse, put a cement foundation under the house, painted the house, made several additions to the barn, seeded several acres to grass, grubbed out stumps, cut large hedges, built fences, and otherwise permanently improved the property. Aside from defendant's own labor and that of his sons for the improvement of the farm, he exhibited receipts for payments for materials and labor made by him, aggregating several hundred dollars.

The aggregate of plaintiff's causes of action was for $731.68 and interest; defendant's cross action was for $903.56. The jury returned a verdict for defendant for $99.57.

Plaintiff assigns several errors, which will be noted in the order presented.

It is hardly accurate for plaintiff to say that the verbal agreements contradicted the terms of the written instruments. The instruments—the leases made from year to year—did not profess to cover the subject of the improvements. There is no reason to think the matter of improvements was involved in the annual written contracts of lease. It does not appear that the oral agreements concerning reimbursements for improvements were part of the leases nor merged therein. The times when the oral agreements were made had no relation to the times when the annual leases were executed. If the oral agreements to pay for the improvements had been made between the landowner and some third person not residing on the land, no one would have the hardihood to maintain that the landlord would not be bound to pay for them. Nor would there be any justice in holding that because the party making the improvements was a tenant of the landlord he should not be paid for making them. This view of the controversy does not require the court to go the full length contended for by defendant—that the annual leases were merely to specify the rent in writing—nor is it necessary to give force to the tenant's contention, that he was entitled to hold the property until it should be sold by the landlord. The matter is clearly severable. The agreement, if there was one—or the illegal agreement as it really appears to have been—that the defendant could retain the farm as long as the landlord owned it, is readily severable from the various agreements between the defendant A. J. Smith and the plaintiff touching the improvements. Thus, when the building of an addition to the house was under consideration, plaintiff said:

"It is for thee, Albert; I will never make thee move. If thee has to move, I will pay thee for it."

And, when the building or enlarging of the barn was under consideration, plaintiff said:

"All of these improvements is for thee, and if thee ever has to move, I will pay thee for all of them."

The promise, "I will never make thee move," may be wholly void, as being at variance with the annual written leases, or because it is an abortive obligation pretending to convey an interest in land of greater dignity than a lease for a year, which could not be done except in writing; and it may also be void as indefinite and without consideration. But the promise, "If thee ever has to move, I will pay thee for it," is a binding severable obligation, not dependent upon the length of the term of tenancy; and it can and should be enforced. (*Fackler v. Ford,* McCahon, 21, 1 Kan. [Dass. ed.] 463, syl. ¶ 2; 9 Cyc. 569; 1 M. A. L. 495, 496.)

In 6 R. C. L. 682 it is said:

"But where the consideration for a contract is made up of several distinct transactions or several parts, some of which are legal while others are illegal, and the legal portions of the consideration can be separated from the illegal portion, the contract will be upheld, at least if it contains nothing contrary to good morals and nothing for which a legal penalty is incurred. A similar rule seems to apply where the illegal portion of the consideration is merely incidental."

It is next urged that, even if the oral agreements to pay for the improvements were not merged into the annual contracts of lease, the defendant's cause of action thereon was not mature. The plaintiff landlord had taken steps to terminate the tenancy. He had leased the farm to another tenant and had already let the new tenant into possession of part of the property. It was not necessary for defendant to wait until he was forced to surrender the whole premises. When defendant pleaded his cross action it was then apparent he would "have to move"; the time for payment had substantially arrived in accordance with plaintiff's promise, "If thee has to move, I will pay thee."

The court discerns no merit in plaintiff's next contention— that if the defendant's claims were mature, they were more than three years old and barred by the statute of limitations. The statute never begins to run until an obligation is due. The term fixed for payment was uncertain, but since it could have wholly matured within a year, and there had been complete performance by the defendant, neither the statute of frauds nor the statute of limitations barred the defendant's cross action. (*Larimer v. Kelley,* 10 Kan. 298, 312; *Stout v. Ennis,* 28 Kan. 706, Note [Dass. ed.], p. 715; *Sutphen v. Sut-*

*phen,* 30 Kan. 510, 2 Pac. 100; *A. T. & S. F. Rld. Co. v. English,* 38 Kan. 110, 117, 16 Pac. 82; *Aiken v. Nogle,* 47 Kan. 96, 98, 27 Pac. 825; *Heery v. Reed,* 80 Kan. 380, 102 Pac. 846; Browne on Frauds, 2d ed., § 279; 20 Cyc. 199.) Plaintiff's obligation to pay was not due, not mature, until he leased the farm to another tenant.

Touching the proper measure of recovery, the measure was fixed by the agreement of the parties and did not rest on abstract principles of law which courts apply in the absence of such agreements.

Neither error of law nor miscarriage of justice can be discerned in this case, and the judgment of the trial court is affirmed.